**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DOUG LAIR; STEVE DOGIAKOS;
AMERICAN TRADITION
PARTNERSHIP; AMERICAN
TRADITION PARTNERSHIP PAC;
MONTANA RIGHT TO LIFE
ASSOCIATION PAC; SWEET GRASS
COUNCIL FOR COMMUNITY
INTEGRITY; LAKE COUNTY
REPUBLICAN CENTRAL COMMITTEE;
BEAVERHEAD COUNTY REPUBLICAN
CENTRAL COMMITTEE; JAKE OIL,
LLC; JL OIL, LLC; CHAMPION
PAINTING,

        *Plaintiffs-Appellees*,

v.

STEVE BULLOCK, in his official
capacity as Attorney General of the
State of Montana; JAMES MURRAY,
"Jim", in his official capacity as
Commissioner of Political Practices;
LEO GALLAGHER, in his official
capacity as Lewis and Clark County
Attorney,

        *Defendants-Appellants*.

No. 12-35809

D.C. No.
6:12-cv-00012-
CCL

DOUG LAIR; STEVE DOGIAKOS; AMERICAN TRADITION PARTNERSHIP; AMERICAN TRADITION PARTNERSHIP PAC; MONTANA RIGHT TO LIFE ASSOCIATION PAC; SWEET GRASS COUNCIL FOR COMMUNITY INTEGRITY; LAKE COUNTY REPUBLICAN CENTRAL COMMITTEE; BEAVERHEAD COUNTY REPUBLICAN CENTRAL COMMITTEE; JAKE OIL, LLC; JL OIL, LLC; CHAMPION PAINTING,

*Plaintiffs*,

and

RICK HILL, Warden; A LOT OF FOLKS FOR RICK HILL; LORNA KUNEY,

*Intervenor-Plaintiffs–Appellants*,

v.

STEVE BULLOCK, in his official capacity as Attorney General of the State of Montana; JAMES MURRAY, "Jim", in his official capacity as Commissioner of Political Practices; LEO GALLAGHER, in his official capacity as Lewis and Clark County Attorney,

*Defendants-Appellees*.

No. 12-35889

D.C. No.
6:12-cv-00012-
CCL

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Montana
Charles C. Lovell, Senior District Judge, Presiding

Argued and Submitted
February 5, 2015—Seattle Washington

Filed May 26, 2015
Amended September 1, 2015

Before: Raymond C. Fisher, Carlos T. Bea,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Bea

## SUMMARY[*]

### Civil Rights

The panel reversed the district court's judgment, entered following a non-jury trial, and remanded in an action challenging, under the First Amendment, Montana's dollar limits on contributions to political candidates.

The panel held that the district court applied the wrong legal standard prior to enjoining permanently the enforcement of Montana's restrictions on campaign contributions by individuals, political action committees, and political parties. The panel held that the district court applied neither the new

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

formulation of what constitutes an important state interest set forth in *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), nor the correct formulation, set forth in *Mont. Right to Life Ass'n v. Eddleman*, 343 F.3d 1085 (9th Cir. 2003), of whether the state's contribution limits are "closely drawn" to the state's goal of preventing quid pro quo corruption or its appearance. The panel remanded in order to allow Montana's political contribution limits to be tested under the new and more restrictive standard of *Citizens United*, and the correct "closely drawn" test set forth in *Eddleman*.

## COUNSEL

Matthew T. Cochenour (argued) and Michael G. Black, Assistant Attorneys General, and Tim Fox, Attorney General, Montana Department of Justice, Helena, Montana, for Defendants-Appellants.

Matthew G. Monforton (argued), Monforton Law Offices, PLLC, Bozeman, Montana, for Intervenor-Plaintiffs–Appellants.

James Bopp, Jr. (argued) and Jeffrey Gallant, The Bopp Law Firm, PC, Terre Haute, Indiana; Anita Y. Milanovich, The Bopp Law Firm, PC, Bozeman, Montana, for Plaintiffs-Appellees.

J. Gerald Hebert, Paul S. Ryan, Tara Malloy, and Megan McAllen, Campaign Legal Center, Washington, D.C., for Amici Curiae Campaign Legal Center, Common Cause, Justice at Stake, and League of Women Voters.

Ronald A. Fein and John C. Bonifaz, Free Speech for People, Amherst, Massachusetts, for Amici Curiae Free Speech for People, The Honorable James C. Nelson, American Independent Business Alliance, and American Sustainable Business Counsel.

## ORDER

The opinion filed on May 26, 2015 is replaced by the amended opinion filed concurrently with this order. With these amendments, Judges Bea and Murguia have voted to deny the petition for rehearing en banc, and Judge Fisher so recommends.

The suggestion for rehearing en banc has been circulated to the full court, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35(b). The petition for rehearing en banc is **DENIED**.

No further petitions shall be entertained.

## OPINION

BEA, Circuit Judge:

We are called on to determine whether Montana's dollar limits on contributions to political candidates are constitutional under the federal Constitution's First Amendment. The claims against the limits are familiar. Limitations on contributions effectively abridge free speech in two primary ways. First, the contribution itself is a general expression of the donor's support for the candidate and his views. Limiting the amount a donor can contribute curtails that expression. Second, it costs the candidate money to produce political speech that will be heard. Without that money, candidates will be silenced; their ideas will not be considered by the voters at elections.

These claims are doubly familiar to us because we have already considered some of Montana's contribution limits and found they passed constitutional muster.[1] Why consider them again? We must because, after *Citizens United*,[2] what constitutes a sufficiently important state interest to justify limits on contributions has changed. Now, the prevention of quid pro quo corruption, or its appearance, is the only sufficiently important state interest to justify limits on campaign contributions. Before *Citizens United*, it was enough to show the state's interest was simply to prevent the influence contributors of large sums have on politicians, or the appearance of such influence. No longer so.

---

[1] *Mont. Right to Life Ass'n v. Eddleman*, 343 F.3d 1085 (9th Cir. 2003).

[2] *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010).

After a non-jury trial, the district court held Montana's contribution limits were unconstitutional, and permanently enjoined their enforcement.[3] But the district court applied neither *Citizens United*'s new formulation of what constitutes an important state interest nor the correct formulation of whether the state's contribution limits are "closely drawn"[4] to the state's goal of preventing quid pro quo corruption or its appearance. To allow Montana's political contribution limits to be tested under the new and more restrictive standard of *Citizens United*, and the correct "closely drawn" test, we reverse and remand for proceedings consistent with this opinion.

I.

A.

Since 1994, Montana has limited how much individuals, political action committees, and political-party-affiliated committees are allowed to contribute to candidates for state office. *See* Mont. Code Ann. § 13-37-216; *Lair v. Bullock*, 697 F.3d 1200, 1201 (9th Cir. 2012) ("*Lair I*"). By statute, individuals and political action committees ("PACs") can contribute up to $500 total to two candidates who filed jointly and are running together for the offices of governor and lieutenant governor, $250 to candidates running for other statewide offices, and $130 to candidates running for any

---

[3] We granted a stay of that injunction, pending determination of this appeal. *Lair v. Bullock*, 697 F.3d 1200, 1202 (9th Cir. 2012).

[4] A "closely drawn" test is one that ensures the state's contribution limits are not lower than needed to accomplish the state's goal of preventing quid pro quo corruption or its appearance.

other state public office, including candidates for the state senate and the state house of representatives. Mont. Code Ann. § 13-37-216(1)(a) ("Individual/PAC Limits"). These amounts are adjusted for inflation using the Consumer Price Index as a marker. Mont. Code Ann. § 13-37-216(4)(a). The current limits are $650, $320, and $170, respectively. Mont. Admin. R. § 44.10.338(1).

Political parties and their affiliated committees can contribute more than can individuals. Montana treats all committees that are affiliated with a political party as one entity.[5] Mont. Code Ann. § 13-37-216(3). A political party or its party-affiliated committees can contribute, in the aggregate, up to $18,000 to two candidates running together for the offices of governor and lieutenant governor, $6,500 to candidates running for other statewide offices, $2,600 to candidates for public service commissioner, $1,050 to candidates for state senate, and $650 to candidates running for any other state public office, including the state house of representatives. Mont. Code Ann. § 13-37-216(3) ("Party Limits"). These amounts are also adjusted for inflation using the Consumer Price Index, and the current limits are $23,350, $8,450, $3,350, $1,350, and $850 respectively. Mont. Admin. R. § 44.10.338(2).

Appellees are individuals, PACs, and party-affiliated committees (together, "Lair") that challenge these restrictions as unconstitutional burdens on their freedom of speech under

---

[5] The statute defines political parties as "any political organization that was represented on the official ballot at the most recent gubernatorial election." Mont. Code Ann. § 13-37-216(3). Donations that come from the political party itself and from political committees affiliated with that party are subject to one aggregate limit. *Id.*

the federal Constitution's First Amendment. Intervenors are Rick Hill, a 2012 candidate for governor, Hill's campaign treasurer, and a committee associated with the Hill campaign (together, "Hill Campaign"). The Hill Campaign supports Lair's challenge. Appellants are the Attorney General of the State of Montana, Montana's Commissioner of Political Practices, and a county attorney, each sued in their official capacity (together, "Montana").

### B.

The district court held a non-jury trial in September 2012 and shortly after issued findings of fact and conclusions of law. The district court concluded Montana's Individual/PAC Limits and Party Limits were unconstitutional under the federal Constitution's First Amendment and permanently enjoined their enforcement. The district court's decision turned on our prior case addressing the constitutionality of Montana's contribution limits and a Supreme Court case that followed. Montana has appealed that decision. Because our decision today relies in large part on the chronology of those prior cases, as well as subsequent cases, we discuss them in chronological order.

1. *Montana Right to Life Association v. Eddleman*, 343 F.3d 1085 (9th Cir. 2003).

The story begins with our opinion in *Montana Right to Life Ass'n v. Eddleman*, 343 F.3d 1085 (9th Cir. 2003), upon whose continued validity this appeal turns. There, the district court conducted a non-jury trial on the constitutionality of the Individual/PAC Limits and found those limits were constitutional under *Buckley v. Valeo*, 424 U.S. 1 (1976), and its progeny. *See Montana Right to Life Assoc. v. Eddleman*,

96-165-BLG-JDS, 2000 U.S. Dist. LEXIS 23161, at *3 (D. Mont. Sept. 19, 2000). We affirmed. We first set out the Supreme Court's framework for addressing campaign contribution limits per *Buckley*, the Court's foundational opinion on what governmental limitations of campaign finance violate the free speech rights guaranteed by the First Amendment. *Eddleman*, 343 F.3d at 1090–92. In *Buckley*, the Supreme Court struck down limitations on how much candidates could spend on their campaigns, but upheld limitations on how much donors could give to candidates' campaigns. *Id.* at 1090. Central to the Supreme Court's decision validating contribution limits was its finding of the minimal effect those contribution limits had on individuals' First Amendment free speech rights: "A limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication." *Id.* (emphasis omitted) (quoting *Buckley*, 424 U.S. at 20). Per the Supreme Court, a contribution "serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support." *Id.* (quoting *Buckley*, 424 U.S. at 21). For that reason, a contribution limitation "involves little direct restraint on [the contributor's] political communication, for it permits the symbolic expression of support evidenced by a contribution but does not in any way infringe the contributor's freedom to discuss candidates and issues." *Id.* (quoting *Buckley*, 424 U.S. at 21). The Supreme Court therefore did not apply the "strict scrutiny" doctrine to contribution limits. *Id.* at 1091.[6] Instead, the Court explained

---

[6] "Strict scrutiny" is the most demanding test that the First Amendment requires to test governmental regulation of speech for its constitutionality. It requires the governmental regulation serve "a compelling government

that contribution limits will be upheld "if the State demonstrates a sufficiently important interest and employs a means closely drawn to avoid unnecessary abridgment of associational freedoms." *Id.* (quoting *Buckley*, 424 U.S. at 25).

We noted in *Eddleman* that the Supreme Court reaffirmed *Buckley* in *Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377 (2000). *Eddleman*, 343 F.3d at 1091. We synthesized those two cases to create a test for challenges to contribution limits:

> [S]tate campaign contribution limits will be upheld if (1) there is adequate evidence that the limitation furthers a sufficiently important state interest, and (2) if the limits are "closely drawn"—*i.e.*, if they (a) focus narrowly on the state's interest, (b) leave the contributor free to affiliate with a candidate, and (c) allow the candidate to amass sufficient resources to wage an effective campaign.

*Eddleman*, 343 F.3d at 1092. In conducting this "closely drawn" tailoring analysis, courts must be "mindful that the dollar amounts employed to prevent corruption should be upheld unless they are 'so radical in effect as to render political association ineffective, drive the sound of a candidate's voice beyond the level of notice, and render contributions pointless.'" *Id.* at 1094 (quoting *Shrink Missouri*, 528 U.S. at 397). "[W]e look at all dollars likely to be forthcoming in a campaign, rather than the isolated contribution, and we also consider factors such as [1] whether

interest and [be] narrowly drawn to serve that interest." *Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2738 (2011).

the candidate can look elsewhere for money, [2] the percentage of contributions that are affected, [3] the total cost of the campaign, and [4] how much money each candidate would lose." *Id.* (internal citations omitted).

In *Eddleman*, we identified Montana's asserted "important state interest" as "preventing corruption or the appearance of corruption." *Id.* at 1092. We explained that a "state's interest in preventing corruption or the appearance of corruption is not confined to instances of bribery of public officials, but extends 'to the broader threat from politicians too compliant with the wishes of large contributors.'" *Id.* (quoting *Shrink Missouri*, 528 U.S. at 389). We affirmed the district court's holding that Montana carried its burden to show that broad state interest. *Id.* at 1092–93; *see also Eddleman*, 2000 U.S. Dist. LEXIS 23161, at *9, *13 (concluding Montana had shown an important state interest in combating corruption and its appearance). Neither we nor the district court relied on a holding that Montana showed exclusively quid pro quo corruption or its appearance. *See Eddleman*, 343 F.3d at 1092–93; *Eddleman*, 2000 U.S. Dist. LEXIS 23161, at *6–8, *11–12. We also held the Individual/PAC Limits were "closely drawn" under this newly minted standard. *Id.* at 1093–96.

2. *Randall v. Sorrell*, 548 U.S. 230 (2006).

The Supreme Court decided *Randall v. Sorrell*, 548 U.S. 230 (2006), after our opinion in *Eddleman*. That case addressed the constitutionality of Vermont's campaign contribution limits. *Id.* at 236. Like Montana, Vermont limited contributions by individuals, PACs, and political parties to candidates for state office. *Id.* at 238–39. The Supreme Court found the contribution limits violated First

Amendment free speech rights and were unconstitutional. *Id.* at 262–63. But no single opinion garnered a majority of the justices. Justice Breyer wrote the plurality opinion, which Chief Justice Roberts and Justice Alito joined in relevant part. *Id.* at 246–53. The plurality outlined a new two-part, multi-factor "closely drawn" test for restrictions on contributions. Under that test, the reviewing court first should identify if there are any "danger signs" that the restrictions on contributions prevent candidates from amassing the resources necessary to be heard or put challengers at a disadvantage vis-a-vis incumbents. *Id.* at 249–52. The plurality found four "danger signs" in Vermont's contribution limits: "(1) The limits are set per election cycle, rather than divided between primary and general elections; (2) the limits apply to contributions from political parties; (3) the limits are the lowest in the Nation; and (4) the limits are below those we have previously upheld." *Id.* at 268 (Thomas, J., concurring) (listing the plurality's "danger signs"); *see also id.* at 249–53 (plurality op.); *Lair I*, 697 F.3d at 1208–10. The plurality held, if such danger signs exist, then the court must determine whether the limits are "closely drawn." *Randall*, 548 U.S. at 249, 253.

The plurality looked to "five sets of considerations" to determine whether the statute was closely drawn: (1) whether the "contribution limits will significantly restrict the amount of funding available for challengers to run competitive campaigns"; (2) whether "political parties [must] abide by *exactly* the same low contribution limits that apply to other contributors"; (3) whether "volunteer services" are considered contributions that would count toward the limit; (4) whether the "contribution limits are . . . adjusted for inflation"; and (5) "any special justification that might warrant a contribution limit so low or so restrictive." *Id.* at 253–62; *Lair I*, 697 F.3d

at 1210. The plurality found each factor weighed against the contribution limits' constitutionality and held the limits violated First Amendment free speech rights. *Randall*, 548 U.S. at 262.

Justice Thomas, joined by Justice Scalia, concurred in the decision to strike down Vermont's contribution limits. *Id.* at 265 (Thomas, J., concurring in the judgment). But Justice Thomas expressly disagreed with the plurality's "rationale for striking down that statute." *Id.* Instead, he would overrule *Buckley* and its progeny because "*Buckley* provides insufficient protection to political speech." *Id.* at 266. He noted "[t]he illegitimacy of *Buckley* is . . . underscored by the continuing inability of the Court (and the plurality here) to apply *Buckley* in a coherent and principled fashion." *Id.* Justice Kennedy concurred "only in the judgment" in a separate opinion that expressed skepticism of *Buckley* and its progeny's viability. *Id.* at 264–65 (Kennedy, J., concurring in the judgment).

   3.   Lair's Challenge in the District Court: *Lair v. Murry*,
        903 F. Supp. 2d 1077 (D. Mont. 2012).

Lair now challenges the Individual/PAC Limits, which the Ninth Circuit upheld in *Eddleman*, and the Party Limits, which were not at issue in *Eddleman*. After a non-jury trial, the district court issued a brief order, without any analysis. It found the Individual/PAC Limits and Party Limits unconstitutional and enjoined their enforcement. Seven days later, the district court issued its findings of fact and conclusions of law. *Lair v. Murry*, 903 F. Supp. 2d 1077 (D. Mont. 2012). The district court concluded it was not bound by the Ninth Circuit's decision in *Eddleman* because the Supreme Court's "closely drawn" analysis in *Randall*

abrogated both *Eddleman*'s "closely drawn" analysis and *Eddleman*'s ultimate holding that the Individual/PAC Limits are constitutional. *Id.* at 1086–89. Unbound by *Eddleman*, the district court then proceeded to analyze Montana's Individual/PAC Limits and Party Limits under the *Randall* plurality's standard. The court first "assum[ed] that the State of Montana has a 'sufficiently important interest' in setting contribution limits." *Id.* at 1089 (quoting *Randall*, 548 U.S. at 247). The court then applied the *Randall* plurality's two-part, multi-factor "closely drawn" analysis to the facts presented at the bench trial and found Montana's limits were not closely drawn. *Id.* at 1089–93. The district court therefore permanently enjoined Montana from enforcing the Individual/PAC and Party Limits. *Id.* at 1093–94.

    4.   Emergency Motion in the Ninth Circuit to Stay: *Lair v. Bullock*, 697 F.3d 1200 (9th Cir. 2012).

Montana filed in the Ninth Circuit an emergency motion to stay the district court's injunction. *Lair I*, 697 F.3d at 1203. As a part of its analysis, our motions panel was required to determine whether Montana "made a strong showing that [it] is likely to succeed on the merits" of its appeal. *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The panel concluded Montana made that showing because, contrary to what the district court had stated, the Supreme Court's decision in *Randall* did *not* abrogate the Ninth Circuit's opinion upholding the Individual/PAC Limits in *Eddleman*. To that end, the panel applied the Supreme Court's test from *Marks v. United States*, 430 U.S. 188 (1977), to determine whether *Randall* had a binding majority opinion. *Id.* at 1204–06. That test asks whether, in a fractured Supreme Court decision, "one opinion can be meaningfully regarded as narrower than another *and* can

represent a common denominator of the Court's reasoning." *Id.* at 1205 (quoting *United States v. Rodriguez–Preciado*, 399 F.3d 1118, 1140 (9th Cir. 2005)). The panel held that Justice Breyer's plurality opinion could not represent a "common denominator" with Justice Thomas's concurring opinion because Justices Thomas and Scalia would strike down *Buckley* and its progeny in their entirety rather than apply *Buckley*, as did Justice Breyer's plurality. *Id.* As a result, there was no majority, controlling opinion in *Randall*: "The only binding aspect of *Randall* . . . is its judgment, striking down the Vermont contribution limit statute as unconstitutional." *Id.* at 1206. The motions panel therefore held Montana was likely to succeed on the merits of its appeal and, after addressing the other stay factors, stayed the district court's permanent injunction pending a decision by a merits panel. *Id.* at 1215–16. The case then came before us.

II.

We review for abuse of discretion a district court's decision to issue a permanent injunction. *Gathright v. City of Portland*, 439 F.3d 573, 576 (9th Cir. 2006). Under that standard, we review legal conclusions de novo. *Brown v. California DOT*, 321 F.3d 1217, 1221 (9th Cir. 2003). We review the district court's findings of fact for clear error, but review the application of law to those facts de novo on free speech issues. *Id.*; *see also La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) ("If the district court identified and applied the correct legal rule to the relief requested, we will reverse [a permanent injunction] only if the court's decision resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." (citation omitted) (internal quotation marks omitted)).

The most important standard for this case comes from our en banc decision in *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc). *Gammie* explained that three-judge panels are normally bound by the decisions of prior three-judge panels. *Id.* at 892–93. But "where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Id.* at 893.

## A.

The central question in this appeal is what parts of *Eddleman*, if any, remain good law in this circuit. Lair contends the district court was not bound to apply *Eddleman*'s "closely drawn" analysis or to follow *Eddleman*'s holding that the Individual/PAC Limits are constitutional. Lair makes two arguments in support: (1) *Citizens United* abrogated *Eddleman*'s "important state interest" analysis because, after *Citizens United*, a state may no longer justify limits on political contributions as a means to prevent politicians too compliant with the interests of contributors of large sums—only quid pro quo corruption or its appearance can justify contribution limits; and (2) *Randall*'s two-part, multi-factor "closely drawn" test, which evaluates various "danger signs" and case-specific factors, abrogated *Eddleman*'s "closely drawn" test, which analyzes (a) whether the contribution limits narrowly combat quid pro quo corruption or its appearance, (b) whether contributors are able to associate with the candidate in ways other than donating money, and (c) whether the candidate is able to amass sufficient resources to wage an effective campaign. We address each argument in turn.

1. *Citizens United* abrogated *Eddleman*'s "important
   state interest" analysis.

Lair argues the Supreme Court's decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), and by extension *McCutcheon v. Federal Election Commision*, 134 S. Ct. 1434 (2014), abrogated *Eddleman*'s "important state interest" analysis; therefore, *Eddleman* is no longer binding precedent on the point of what constitutes an "important state interest" sufficient to limit political speech through contribution limitations. The Supreme Court has long held that preventing "corruption or the appearance of corruption" is the only valid interest that supports limits on campaign contributions. *See, e.g.*, *Shrink Missouri*, 528 U.S. at 388–89. But what constitutes "corruption" has been open to debate. *Buckley* held that "corruption" includes quid pro quo arrangements or the appearance thereof. *Id.* (explaining *Buckley*). The Supreme Court in *Shrink Missouri* defined "corruption" more broadly, explaining that "corruption" is "not confined to bribery of public officials, but extend[s] to the broader threat from politicians too compliant with the wishes of large contributors." *Id.* at 389. To that end, the government can "constitutionally address the power of money 'to influence governmental action' in ways less 'blatant and specific' than bribery." *Id.* (quoting *Buckley*, 424 U.S. at 28).

In *Eddleman*, the district court and the Ninth Circuit relied on *Shrink Missouri*'s broader definition of corruption to find Montana had shown an "important state interest." In that regard, the state interest encompassed "combat[ing] improper influence, or the appearance thereof, resulting from large campaign contributions." *Eddleman*, 2000 U.S. Dist. LEXIS 23161, at *6–7. The district court expressly relied on *Shrink Missouri*'s holding that the valid corruption interest is

"not confined to bribery of public officials, but extend[s] to the broader threat from politicians too compliant with the wishes of large contributions." *Id.* at \*9 (quoting *Shrink Missouri*, 528 U.S. at 389); *see also id.* at \*6–7, \*11–12 (reiterating the district court was relying on an "influence" standard). On appeal, we also relied on the same broader definition of "corruption" in affirming the district court. *See Eddleman*, 343 F.3d at 1092–93.

The Supreme Court has since clarified what qualifies as "corruption" under the "important state interest" analysis. In *Citizens United*, the Court explained that "[w]hen *Buckley* identified a sufficiently important governmental interest in preventing corruption or the appearance of corruption, *that interest was limited to quid pro quo corruption*." *Citizens United*, 558 U.S. at 359 (emphasis added). The Court rejected the broader "influence" standard: "Reliance on a 'generic favoritism or *influence* theory . . . is at odds with standard First Amendment analyses because it is unbounded and susceptible to no limiting principle.'" *Id.* (alteration in original) (emphasis added) (quoting *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 296 (2003) (Kennedy, J., concurring)). We have already recognized that *Citizens United* "narrowed the scope of the anti-corruption rationale to cover quid pro quo corruption only, as opposed to money spent to obtain influence over or access to elected officials." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1119 (9th Cir. 2011) (quoting *Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 694 n.5 (9th Cir. 2010)) (internal quotation marks omitted). Because *Eddleman* relied at least in part on a state's interest in combating "influence," whereas *Citizens United* narrowed the analysis to include quid pro quo corruption but to exclude the state's interest in combating "influence," *Citizens United* abrogated

*Eddleman*'s "important state interest" analysis. *See Gammie*, 335 F.3d at 893. *Eddleman*'s holding that the Individual/PAC Limits are constitutional is no longer binding on this panel or courts of the Ninth Circuit because that holding relied on a state interest analysis now made invalid by *Citizens United*. We must now follow *Citizens United*'s narrower analysis: "corruption" means only quid pro quo corruption, or its appearance.[7]

    2.   *Randall* did not abrogate *Eddleman*'s "closely drawn" analysis.

Lair also reprises the argument that the Supreme Court abrogated *Eddleman*'s "closely drawn" analysis in *Randall* when a plurality outlined a different "closely drawn" analysis, and the district court's reliance on the *Randall* plurality was therefore not legal error. This argument is foreclosed by *Gammie* because of our motions panel decision. The motions panel in *Lair I* explicitly held that *Randall* did not contain a majority opinion capable of abrogating *Eddleman*. *Lair I*, 697 F.3d at 1204 ("*Randall* is not binding authority because there was no opinion of the Court."); *id.* at 1206 ("The only binding aspect of *Randall* . . . is its judgment, striking down the Vermont contribution limit statute as unconstitutional.");

---

[7] Montana argues that *Citizens United* could not have narrowed the "important state interest" analysis because *Citizens United* addressed only expenditure limits, and not contribution limits. Our prior panels have already held that *Citizens United* narrowed the interests that can support contribution limits to quid pro quo or its appearance. *Thalheimer*, 645 F.3d 1119; *Long Beach*, 603 F.3d at 694. But to the extent *Citizens United* left that question open, *McCutcheon* confirmed that quid pro quo or its appearance are the only interests that can support contribution restrictions. *McCutcheon*, 134 S. Ct. at 1450–51 (plurality op.); *id.* at 1462–64 (Thomas, J., concurring).

*id.* ("Since *Randall* is otherwise only persuasive, in this context it could not have altered the law as previously dictated by such cases as *Buckley* and *Shrink Missouri*, the law we expressly relied upon in *Eddleman*."). Lair contended at oral argument that a motions panel's decision cannot bind a merits panel, and as a result we are not bound by the motions panel's analysis in this case. Not so. We have held that motions panels can issue published decisions. *See Haggard v. Curry*, 631 F.3d 931, 933 n.1 (9th Cir. 2010); *Pearson v. Muntz*, 606 F.3d 606, 608 n.2 (9th Cir. 2010); *see also* General Order 6.3(g)(3)(ii); Circuit Rule 36-1. Under *Gammie*, we are bound by a prior three-judge panel's published opinions, *Gammie*, 335 F.3d at 892–93, and a motions panel's published opinion binds future panels the same as does a merits panel's published opinion, *see* Circuit Rule 36-1 ("A written, reasoned disposition of a case *or motion* which is designated as an opinion [under the Ninth Circuit's criteria for publication] is an OPINION of the Court. . . . All opinions are published . . . . As used in this rule, the term PUBLICATION means to make a disposition available to legal publishing companies *to be reported and cited*." (emphasis added)). In any event, the *Lair I* panel was not the first one to hold that no opinion in *Randall* carried a majority. Another panel arrived at that same conclusion in 2011. *See Thalheimer*, 645 F.3d at 1127 n.5. We can hold *Eddleman* was abrogated only if "the reasoning or theory" of *Eddleman* "is clearly irreconcilable with the reasoning or theory of . . . later and *controlling* authority." *Gammie*, 335 F.3d at 893 (emphasis added). With no majority opinion, *Randall* cannot serve as the requisite "controlling authority" capable of abrogating our precedent. *See Thalheimer*, 645 F.3d at 1127 n.5.

B.

Where does this leave us?  We hold today the district court was incorrect to find *Randall*'s "closely drawn" analysis abrogated *Eddleman*'s "closely drawn" analysis, because there simply was no binding *Randall* decision on that point. But we also hold that *Citizens United* did abrogate *Eddleman* because *Eddleman* relied on a now-invalid "important state interest"—combating influence, not just preventing quid pro quo corruption or its appearance.  Because *Eddleman* relied on a now-invalid state interest, its ultimate holding that the Individual/PAC Limits are constitutional is abrogated.  But *Citizens United* left untouched *Eddelman*'s formulation of the overall framework for determining whether contribution limits are constitutional; it simply narrowed what constitutes an "important state interest."  *Eddleman*'s framework is otherwise still sound, and the test remains the same going forward:

> [S]tate campaign contribution limits will be upheld if (1) there is adequate evidence that the limitation furthers a sufficiently important state interest, and (2) if the limits are "closely drawn"—*i.e.*, if they (a) focus narrowly on the state's interest, (b) leave the contributor free to affiliate with a candidate, and (c) allow the candidate to amass sufficient resources to wage an effective campaign.

*Eddleman*, 343 F.3d at 1092.  As a result, the district court's decision to apply *Randall*'s "closely drawn" analysis to the Individual/PAC Limits and the Party Limits was legal error. The district court therefore abused its discretion when it

entered a permanent injunction, and we remand for the district court to apply the correct standard.[8]

We provide some instruction on remand. The district court here assumed Montana had shown an "important state interest" but did not identify what that interest was. But it is difficult to address whether contribution limits further the state's asserted interest, and whether the limits are "closely drawn" to that interest, unless we know exactly what that interest is. *See, e.g.*, *McCutcheon*, 134 S. Ct. at 1445 ("[W]e must assess the fit between the stated governmental objective and the means selected to achieve that objective."); *id.* at 1456 ("In the First Amendment context, fit matters."). On remand, we instruct the district court either (1) to decide whether Montana has carried its burden in showing the contribution limits further a valid "important state interest" or, if the district court again assumes the state has carried its

---

[8] At oral argument, Lair asked us to review the record independently to determine whether Montana's contribution limits are valid. Though we have recognized our review in First Amendment cases is more rigorous than other cases, we still give some deference to the district court's factual findings. *See Newton v. Nat'l Broad. Co*., 930 F.2d 662, 670 (9th Cir. 1990) ("[W]e must simultaneously ensure the appropriate appellate protection of First Amendment values and still defer to the findings of the trier of fact."); *see also Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1082 (9th Cir. 2002). We have no factual findings to review for either the "important state interest" prong, because the district court assumed Montana had shown an important state interest (without identifying what that interest was), or the correct *Eddleman* "closely drawn" analysis, because the district court applied the incorrect *Randall* "closely drawn" analysis. Further, the parties developed a record with a different "important state interest" standard in mind. Montana should have an opportunity to develop a record aimed at the new "important state interest" standard as well as the corresponding "closely drawn" analysis. We express no opinion on how the parties should supplement the current record if they so choose to do.

burden, (2) to identify expressly what interest the district court assumes exists. Doing so will ensure the district court and any reviewing courts will be able to evaluate whether the contribution limits are "closely drawn."[9]

### III

The district court applied the wrong legal standard prior to enjoining permanently the enforcement of Montana's restrictions on campaign contributions by individuals, PACs,

---

[9] Intervenor Rick Hill was the Republican nominee for governor for the 2012 election who received a $500,000 contribution from the Montana Republican Party during the few days the district court's injunction was in effect. The Montana Commissioner of Political Practices opened an investigation into Hill for his receipt and use of the $500,000 donation. The Commissioner has stayed that investigation pending the outcome of this appeal.

Hill intervened in this appeal after the *Lair I* panel vacated the district court's injunction. Hill argues that if we reverse the district court and vacate the injunction against the enforcement of the Party Limits, as we do today, we should leave in place the district court's order enjoining enforcement of those limits for the few days the injunction was in place. In effect, Hill asks this panel to enjoin Montana from prosecuting Hill for receiving the $500,000 donation while the district court's permanent injunction was in place. This issue was not presented to the district court, as Hill intervened after the *Lair I* decision. Moreover, it is not clear there is a live dispute between Hill and Montana; indeed, a district court has already found Hill's attempt to enjoin Montana from prosecuting him to be unripe because the threat of prosecution was too remote. *See* Order at 13–14, *Hill v. Motl*, 6:13-cv-41-RKS (D. Mont. Oct. 18, 2013), ECF No. 35. We therefore decline to grant the relief Hill requests.

and political parties.  We therefore reverse and remand for proceedings consistent with this opinion.[10]

**REVERSED AND REMANDED.**

---

[10] Because we reverse and remand, Lair's renewed motion to lift our stay of the district court's injunction and Montana's motion to strike portions of Lair's motion are denied as moot.  We grant the Hill Campaign's motion for judicial notice.