

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

TAMMY LYNN SHERIDAN,

              Plaintiff - Appellant,

v.

CAROLYN W. COLVIN,

              Defendant - Appellee.

No. 13-16029

D.C. No. 2:12-cv-00277-FJM

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, Senior District Judge, Presiding

Argued and Submitted September 16, 2015
San Francisco, California

Before: W. FLETCHER, BERZON, and BEA, Circuit Judges.

    Tammy Lynn Sheridan appeals a district court's order affirming the decision

of the Commissioner of the Social Security Administration denying disability

benefits.  We reverse and remand.

---

      *    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). In support of his adverse credibility determination, the ALJ noted four supposed "inconsistencies" in Sheridan's testimony and the documentary evidence. We do not agree with the supposed inconsistencies the ALJ noted. We therefore hold that the ALJ failed to provide clear and convincing reasons for his adverse credibility determination.

1. The ALJ found Sheridan's reported daily activities inconsistent with her alleged functional limitations. In her questionnaire, Sheridan reported that she could do laundry, prepare meals, take care of her children, shop, clean the yard, handle her banking, entertain visitors, and watch her son race at the track. These activities, the ALJ concluded, were inconsistent with the reported severity of Sheridan's symptoms. The ALJ failed to note, however, that Sheridan's questionnaire repeatedly noted that she could perform her daily activities only "if it is a good day," or depending "on how [she] feel[s] that day." These omissions in

-2-

the ALJ's decision are significant because they resolve the alleged inconsistency. Sheridan testified that her migraine headaches occur approximately twice per week. Sheridan's questionnaire explains that when the migraines occur, she has trouble functioning, but on a "good day" she can perform certain household chores. Thus, Sheridan's testimony is consistent with her questionnaire. The supposed inconsistency is therefore not a clear and convincing reason for finding Sheridan not credible.

2. The ALJ concluded that Sheridan had provided inconsistent reports about whether physical therapy improved her condition. In July 2007, she reported that physical therapy was helpful for her headaches, and in June 2008, she reported that physical therapy made her headaches worse. As these reports are separated by over 11 months, they are not inconsistent. It is entirely possible that physical therapy improved Sheridan's headaches in July 2007 yet made them worse 11 months later. Thus, this is not a clear and convincing reason for finding Sheridan not entirely credible.

3. The ALJ found Sheridan less than entirely credible because her migraine headaches began in 2003, three years before she stopped working, and Sheridan did not prove that her condition had deteriorated substantially from 2003 until the alleged onset of her disability. We disagree. The record contains

adequate evidence that Sheridan's migraines have become more debilitating over time. Most notably, around the alleged onset date of her disability, Sheridan visited the emergency room twice for severe migraine headaches. She then began regularly seeing several doctors for the condition, including a migraine headache specialist, who prescribed medications. Despite these treatments, Sheridan revisited the emergency room for a migraine headache in October 2010. Based on this evidence, we find this reason for discrediting Sheridan's testimony is not clear and convincing.

4. The ALJ noted that Sheridan had provided inconsistent reports regarding the severity of her headaches and her ability to manage them. An October 1, 2010 letter from Dr. Toffol to Dr. Hoag noted that Sheridan's "migraines with aura have been under good control at least 90% or more improved with oral pharmacotherapy recommended by Dr. Schlichting." Notably, Dr. Toffol did not say, as the ALJ's decision implies he said, that Sheridan's migraine headaches were 90% under control. Rather, Dr. Toffol said that Sheridan's "migraines *with aura* have been under good control." (Emphasis added). Migraines and migraines with aura are not the same condition. Moreover, on October 9, 2010, less than 10 days after Dr. Toffol's letter, Sheridan was transported by ambulance to the hospital for "syncope and headaches." The ALJ's decision does not reference evidence post-dating this

emergency room visit tending to undermine the alleged severity of Sheridan's headaches. The ALJ therefore did not provide clear and convincing reasons for discrediting Sheridan's claim that since this hospital visit, she has been unable to manage her migraine headaches.

The ALJ did not provide clear and convincing reasons for his adverse credibility determination as to the reported severity of Sheridan's headaches. Without an adverse credibility determination, the ALJ's determination that Sheridan can perform "light work" in spite of her migraine headache impairment is not supported by substantial evidence. We reverse and remand to allow the ALJ to provide a sufficient explanation for the denial of benefits, or to award benefits.

**REVERSED AND REMANDED.**

*Sheridan v. Colvin*, No. 13-16029

BEA, Circuit Judge, dissenting:

Sheridan was denied disability benefits because, *inter alia*, the ALJ found that clear and convincing evidence contradicted Sheridan's self-reports about the severity and debilitating effects of her migraine headaches. *See Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015) (absent evidence of malingering, the ALJ may reject a claimant's testimony about the severity of her symptoms only by offering clear and convincing reasons for doing so). The majority rejects the ALJ's finding by separating out four of the six cited inconsistencies in Sheridan's story and considering whether each, in isolation, constitutes "clear and convincing evidence" for discrediting Sheridan's testimony. The majority's error is two-fold: First, it fails to view the ALJ's analysis as a whole. Taken together, the reasons cited by the ALJ more than demonstrate clear and convincing evidence for discrediting Sheridan. Second, the majority seeks after-the-fact to reconcile Sheridan's competing statements and to substitute its judgment for the ALJ's. But the ALJ's interpretation was both reasonable and amply supported by the evidentiary record. I address each of the four grounds rejected by the majority in turn.

Sheridan testified in her January 4, 2011 hearing that she suffered "every day," and "24/7" from "burn[ing]" pain in the back of her head, as well as from more acute migraines accompanied by nausea, vomiting, and blurred vision "two to three" times a week that last "on average" for "two days" and up to "two weeks." Sheridan further testified that she had "chronic pain" in her "legs,"

-1-

"knee[s]," "lower back," "chest," "arms," and "joints." Sheridan claimed that she could not sit, stand, kneel, bend, or walk for more than ten to twenty minutes. The ALJ found these "extreme functional limitations"[1] fundamentally inconsistent with Sheridan's reported daily activities—doing laundry, cooking dinner, cleaning the yard, shopping once or twice a week, caring for two pet dogs, going to the track to watch her son race once a month, and entertaining visitors several times a week. The majority argues that Sheridan stated that she could perform the above-referenced activities only "on a good day," which reconciles any apparent inconsistency. I disagree that the record so shows and, in any event, would find the ALJ's interpretation of the evidence reasonable. Sheridan claimed that she was never free from pain—not just pain on bad days. Moreover, Sheridan did not qualify her claimed postural limitations—stating flatly that she could not sit, stand, or walk for more than ten to twenty minutes. Yet Sheridan's daily activities (even assuming Sheridan performed them only on good days) would require Sheridan to spend *hours* walking, sitting, and standing. The ALJ reasonably found this evidence to be inconsistent.

Sheridan told a health care provider in July 2007 that physical therapy helped her migraines, but then said in June 2008 that physical therapy made her headaches worse.[2] The ALJ reasonably inferred from this inconsistency that Sheridan's story changed after she filed for disability, and thereby concluded that

---

[1] Merriam Webster's defines a "functional disease" as follows: "in medicine, any derangement of an organ in which there is no apparent degeneration, damage, impairment, or structural change." Webster's New Twentieth Century Dictionary of the English Language, Unabridged 741 (Jean L McKechnie et al. eds., 2d ed. 1979).

[2] Incidentally, Sheridan's alleged disability onset date is February 8, 2008, and she filed her application for disability on March 25, 2008.

Sheridan was less than fully credible. The majority's speculation that the effectiveness of physical therapy may have changed over time is not sufficient reason to reject the ALJ's conclusion.

Sheridan also admitted that her migraine headaches began in 2003 and had "worsened" by 2005—three years before she stopped working and filed for disability in March 2008. *See supra*, n. 1. The ALJ found Sheridan's claim that her migraines now rendered her unable to work inconsistent with Sheridan's prior, demonstrated ability to work notwithstanding periodic migraines. The ALJ found no objective evidence in the record to support Sheridan's claim that her migraines had further degraded between 2005 and 2008 so as to reconcile this apparent inconsistency. The majority points to medical records indicating that Sheridan visited the emergency room on February 13, 2008, and that Sheridan *thereafter* sought treatment for her headaches. The majority's focus on post-2008 medical records—without any comparison to pre-2008 records—fails to demonstrate objective degradation in Sheridan's condition from 2005 through 2008 as would justify rejecting the ALJ's determination. And in fact, there is evidence that Sheridan's condition *improved* during 2007; for example, Dr. Toth's July 9, 2007 notes indicate "doing well, headaches have decreased, feels Cymbalta and PT [physical therapy] helpful." In any event, the evidence supports the ALJ's finding of no qualitative difference between Sheridan's pre-2008 symptoms (during which time Sheridan was able to maintain employment) and her post-2008 symptoms.

Nor does Sheridan's hospital visit in October 2010 support the majority's conclusion. The hospital's physical examination revealed nothing out of the ordinary. The hospital noted that Sheridan "only wanted some Toradol,

Compazine, and Benadryl, and Decadron cocktail, which she seemed to remember that that works well [sic], and then wants to go home here. She is otherwise comfortable, and she is discharged in better condition." The hospital concluded, "This is a 46-year-old female who really has no new problems, just the headaches." Thus, again, the ALJ reasonably found no objective support for Sheridan's claim that her symptoms deteriorated between 2005 and 2008. The ALJ therefore properly concluded that Sheridan's demonstrated ability to work notwithstanding her migraines reduced the credibility of Sheridan's claim that she is now unable to work.

Lastly, the majority takes issue with the ALJ's finding that Sheridan provided "inconsistent reports" regarding the severity of her headaches and her ability to manage them. For example, the ALJ said Dr. Toffol's October 2010 report indicates that Sheridan's migraines were "90% under control," yet Sheridan continued to report "great pain" at every visit. The ALJ found this inconsistent. The majority is correct that the ALJ apparently took the reference to Sheridan's headaches being "90%" under control out of context. In full, Dr. Toffol's notes state that Sheridan's "migraines *with aura* have been under control at least 90% or more improved with oral pharmacotherapy . . . ."

But any error is clearly harmless in light of other evidence offered by the ALJ. In addition to the inconsistencies chronicled above—which themselves provide strong support for the ALJ's determination—the ALJ noted that Sheridan reported in October 2009 that medication, rest, and massage relieved her pain, but in January 2009, Sheridan stated that "nothing" relieved her pain. Moreover, the ALJ discredited Sheridan because Sheridan "had broken her contract with her pain management source," and had made "no offer [of] proof to explain how or why";

-4-

finally, Sheridan alleged that she suffered nausea and vomiting associated with her migraines, but had repeatedly denied nausea associated with her migraines to her medical providers.

For all of these reasons, the ALJ offered clear and convincing evidence for discounting the credibility of Sheridan's self-reports. That some of the evidence cited by the ALJ is potentially susceptible to another interpretation does not justify reversal. I therefore respectfully dissent.