O’SCANNLAIN, Circuit Judge,
dissenting:
Today, the Court erroneously orders federal habeas relief to a state prisoner on the basis of a non-existent plea agreement and irrelevant state contract law. Because the decision of the California Court of Appeal affirming Cuero’s conviction was neither contrary to, nor an unreasonable application of, Supreme Court precedent, the district court’s denial of the writ of habeas corpus should have been affirmed.
I respectfully dissent.
I
A
It is appropriate to recapitulate the relevant facts. While driving under the influence of methamphetamine, Michael Daniel Cuero veered off the road and crashed his *897 car into Jeffrey Feldman, another driver who was standing outside his pickup truck on the side of the road. Feldman sustained severe injuries including a ruptured spleen, brain damage, and facial disfigurement. Cuero, a convicted felon prohibited from possessing a firearm, had a loaded firearm with him.
Over the next two weeks, the State filed a complaint and then an amended complaint against Cuero. The amended complaint charged two felonies (driving under the influence and possession of a firearm by a felon) and one misdemeanor (being under the influence of a controlled substance). The State alleged that Cuero had served four prior prison terms and that one of Cuero’s prior convictions constituted a “strike” under California’s “three strikes law.” See Cal. Penal Code § 667(b) — (i).[1] Cuero initially pleaded “not guilty” to the charges in the amended complaint.
On December 8, 2005, Cuero appeared before the superior court to change his plea to guilty. He signed a change of plea form, which stated that he had not been induced to enter the plea by any promises of any kind and that he had no deals with the State.[2] After the court had accepted Cuero’s plea on both felonies and his admissions to the “prison priors” and prior strike, the State moved to dismiss the misdemeanor count, and the court granted the motion. A sentencing hearing was then scheduled.
B
According to the State, during the preparation of the sentencing memorandum for the superior court, the probation officer discovered that one of Cuero’s prior convictions constituted a strike in addition to the single strike alleged in the first amended complaint.[3] Prior to the scheduled sentencing hearing, the State moved under California Penal Code § 969.5(a) further to amend its complaint again to add the allegation of the second strike. Cuero opposed the motion. On February 2, 2006, the superior court granted the motion with the condition that Cuero would be permitted to withdraw his guilty plea, thus restoring all of his constitutional rights. The court then accepted for filing the second amended complaint alleging the additional strike.
On March 27, 2006, Cuero moved to withdraw his guilty plea entered on December 8, 2005. The court granted the motion and set aside that plea. As part of a “negotiated guilty plea,” the State filed a third amended complaint omitting the felon-in-possession charge, and Cuero pleaded guilty to the charge of driving under the influence and admitted the two prior strikes. On April 20, 2006, the court sentenced Cuero to a term of 25 years to life *898 pursuant to the plea agreement and pronounced judgment.
C
Cuero appealed to the California Court of Appeal. Pursuant to People v. Wende, 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d 1071 (1979), and Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), Cuero’s appointed appellate counsel filed a brief setting forth the evidence in the superior court, presented no argument for reversal, but asked the court of appeal to review the record for error. The brief directed the court’s attention to two potential, but not arguable, issues: (1) “whether the trial court abused its discretion by permitting the prosecutor to amend the complaint to allege additional priors after [Cuero’s] initial guilty plea” (citing People v. Sipe, 36 Cal.App.4th 468, 42 Cal.Rptr.2d 266 (1995); People v. Superior Court (Alvarado), 207 Cal.App.3d 464, 255 Cal.Rptr. 46 (1989)); and (2) “whether the amendment constituted a breach of a plea agreement in violation of due process, entitling [Cuero] to specific performance of the original agreement” (citing People v. Walker, 54 Cal.3d 1013, 1 Cal.Rptr.2d 902, 819 P.2d 861 (1991), overruled in part by People v. Villalobos, 54 Cal.4th 177, 141 Cal.Rptr.3d 491, 277 P.3d 179 (2012); People v. Mancheno, 32 Cal.3d 855, 187 Cal.Rptr. 441, 654 P.2d 211 (1982)). The California Court of Appeal granted Cuero permission to file a brief on his own behalf, but he did not respond. The court reviewed the entire record and the possible issues raised by counsel’s Wende/Anders brief. It concluded that they “disclosed no reasonably arguable appellate issue” and affirmed, noting that “[e]ompetent counsel has represented Cuero on this appeal.”
In due course, Cuero brought this petition for habeas corpus in federal district court, where it was properly denied and he timely appealed.
II
A
As a reminder, it must be observed that a state prisoner’s federal habeas petition “shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.”
28 U.S.C. § 2254(d). “This is a ’difficult to meet’ and ’highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.’ ” Cullen v. Pinholster, 563 U.S. 170, 181, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam .
Contrary to the majority’s suggestion that the § 2254(d) “exceptions authorize a grant of habeas relief,” Maj. Op. at 883, these clauses prescribe conditions that are necéssary, but not sufficient, for habeas relief under AEDPA. Other requirements exist. Most importantly for this ease, § 2254(d) “does not repeal the command of § 2254(a) that habeas relief may be afforded to a state prisoner ’only on the ground’ that his custody violates federal law.” Wil *899 son v. Corcoran, 562 U.S. 1, 5-6, 131 S.Ct. 13, 178 L.Ed.2d 276 (2010) (per curiam).
For purposes of § 2254(d)(1), “clearly established Federal law” is “the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.” Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (citations omitted). It “includes only the holdings, as opposed to the dicta, of [the Supreme Court’s] decisions.” Woods v. Donald, — U.S. -, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (per curiam) (quoting White v. Woodall, — U.S.-, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014)).
B
A threshold problem with the opinion’s analysis is its failure to identify the appropriate state-court decision before us. The majority concludes that we should “look through” the opinion of the California Court of Appeal on direct review to the earlier reasoned decision of the San Diego Superior Court. Maj. Op. at 884. However, the look-through doctrine only applies “[w]here there has been one reasoned state judgment rejecting a federal claim,” Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), and we cannot “look through” when the federal claim at issue was not “adjudicated on the merits” in the prior reasoned decision, see 28 U.S.C. § 2254(d); Casey v. Moore, 386 F.3d 896, 918 n. 23 (9th Cir. 2004); Medley v. Runnels, 506 F.3d 857, 870-71 (9th Cir. 2007) (en banc) (Ikuta, J., concurring in part, dissenting in part) (“[W]e do not ’look through’ to a state decision which does not address the constitutional claim.”); see also Murray v. Schriro, 745 F.3d 984, 997 (9th Cir. 2014)[4] (“[W]e ’look through’ to the last state-court decision that provides a reasoned explanation capable of review.” (emphasis added)); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012) (“[W]e look through state-court summary denials to the last reasoned state-court opinion on the claim at issue.” (emphasis added)).
Here, the superior court never did adjudicate the merits of Cuero’s claim that the second amendment of the complaint constituted a breach of his plea agreement in violation of due process, entitling him to specific performance. In Cuero’s brief in opposition to the motion to amend and in oral argument on the motion, he exclusively argued that the superior court should exercise its discretion under state law to deny leave to amend.[5] Cuero did not argue that the second amendment of the complaint would violate due process. He did not argue that any plea agreement prohibited the second amendment of the complaint, nor that he was entitled to specific *900 performance, nor that the state court was required to construe plea agreements in accordance with state contract law. Indeed, Cuero argues to us that his trial counsel was ineffective for failing to raise Cuero’s due process claim before the superior court.
Thus, Cuero never raised a due process claim, and the superior court did not decide one. As a result, Cuero’s claim that the second amendment of the complaint breached a preexisting plea agreement and thereby violated due process was not adjudicated on the merits by the superior court. Such claim was indeed adjudicated on the merits by a single state-court decision: the opinion of the California Court of Appeal on direct review, the only disposi-tive “decision” with respect to which the petition for habeas corpus has been brought.[6]
C
Of course, “[w]here a state court’s decision is unaccompanied by an explanation, the habeas petitioner’s burden still must be met by showing there was no reasonable basis for the state court to deny relief.” Richter, 562 U.S. at 98, 131 S.Ct. 770. In such a situation, we must ask “what arguments or theories ... could have supported[] the state court’s decision” and then determine “whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of’ the Supreme Court. Id. at 102, 131 S.Ct. 770. “Thus, when the state court does not supply reasoning for its decision, we are instructed to engage in an independent review of the record and ascertain whether the state court’s decision was objectively unreasonable. Crucially, this is not a de novo review of the constitutional question, as even a strong case for relief does not mean the state court’s contrary conclusion was unreasonable.” Murray, 745 F.3d at 996-97 (internal quotation marks and citations omitted).
“Adherence to these principles serves important interests of federalism and comity. AEDPA’s requirements reflect a ’presumption that state courts know and follow the law.’ ” Donald, 135 S.Ct. at 1376 (quoting Visciotti, 537 U.S. at 24, 123 S.Ct. 357). “When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as ’a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.’ ” Id. (quoting Richter, 562 U.S. at 102-03, 131 S.Ct. 770.).
Ill
In order to prevail in his petition for habeas corpus, Cuero must demonstrate (among other things) that: (1) on December 8, 2005, he had a plea agreement with terms that prohibited amendment of the complaint; (2) such plea agreement had constitutional significance before the entry of judgment, so that breaching it would violate due process; and (3) rescission of such plea agreement (withdrawal of the plea) was not a constitutionally acceptable remedy for the breach of the plea agreement. Contrary to the majority’s analysis, under the Supreme Court’s holdings in *901 existence at the time of the California Court of Appeal’s decision, he cannot.
A
The majority erroneously concludes that, when Cuero initially pleaded guilty on December 8, 2005, he had a “written plea agreement” in which the government guaranteed that punishment would be no greater than 14 years, 4 months in prison. Maj. Op. at 882-83, 882-83, 883, 885-88 & nn. 8-9, 889-90, 891, 891. To the contrary, fairminded jurists could readily conclude that Cuero’s initial guilty plea was not induced by any agreement with the State, let alone an agreement that the State would never amend its complaint.
On December 8, 2005, Cuero signed a standard change of plea form. As completed, that document states:
1, the defendant in the above-entitled ease, in support of my plea of Guilty/No Contest, personally declare as follows:
2. I have not been induced to enter this plea by any promise or representation of any kind, except: (State any agreement with the District Attorney.)
STC[7] — NO DEALS W/ PEOPLE.
Appendix A at 1 ¶ 2. Cuero’s initials appear next to the line indicating “STC — NO DEALS-W/ PEOPLE.” Id. Cuero declared that he has “read, understood, and initialed each item above ... and everything on the form ... is true and correct.” Id. at 3 ¶13. In his plea colloquy that same day, Cuero confirmed that he had read, understood, and thoroughly reviewed with his attorney the plea form submitted, that he had signed and initialed the document, and that he had no questions about it.[8]
What about the “14 year, 4 month maximum promised by the government,” Maj. Op. at 891, relied upon so heavily by the majority? Such a promise is a figment of the majority’s imagination. The only statement signed by the prosecutor on the change of plea form was the following: “The People of the State of California, plaintiff, by its attorney, the District Attorney for the County of San Diego, concurs with the defendant’s plea of Guilty/No Contest as set forth above.” Appendix A at 3.And at the hearing prosecutor Kristian Trocha said three words before Cuero entered his plea. Those words were “Kristian Trocha” to identify himself in his initial appearance, and “Yes” in the context of the following exchange:
THE COURT: It is a sentence for the court, no deals with the People. His maximum exposure is 14 years, 4 months in state prison, 4 years on parole and a $10,000 fine. That’s the most he could receive by way of this plea; true, Mr. Tamayo?
MR. TAMAYO: It is.
THE COURT: Mr. Trocha?
[MR. TROCHA[9]]: Yes.
See Appendix B at 1, 2 (emphasis added). Thus, the court confirmed that there were “no deals with the People.” And the prose *902 cutor did not promise to refrain from ever doing anything, such as amending the complaint, that would result in a longer sentence. He simply agreed, as a descriptive matter, that 14 years, 4 months, was the maximum prison term Cuero was facing at the time.[10]
Both Cuero’s appellate counsel’s brief and the California Court of Appeal’s decision imply that the initial plea was not induced by a plea agreement. In his brief on appeal, Cuero’s counsel stated that Cuero initially “pled guilty,” with no mention of a plea agreement. In contrast, the brief states that the second guilty plea was made “pursuant to a plea agreement” and sets forth the terms of the charge bargain. Similarly, the Court of Appeal refers to the initial “guilty pleas” and the subsequent “negotiated guilty plea,” which strongly implies that the court of appeal determined that no plea agreement existed for the initial plea. Such determination would not constitute an unreasonable determination of the facts.
Given Cuero’s express declaration that he was not “induced to enter this plea by any promise or representation of any kind” and that there were no deals with the People, a fairminded jurist could readily conclude that the government did not promise Cuero anything, let alone that it would never amend its complaint.
B
Even if there were a plea agreement with terms that prohibited the State from amending its complaint, Cuero would still need to show that, under the Supreme Court’s holdings at the time of the California Court of Appeal’s decision, a fairmind-ed jurist could not possibly conclude either that the plea agreement lacked constitutional significance before the entry of judgment or that rescission was a constitutionally acceptable remedy for a breach of the plea agreement.
In his briefing before our Court, Cuero contends that the California Court of Appeal’s decision was an objectively unreasonable application of Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Apparently unsatisfied with the arguments that Cuero made on his own behalf, the majority regrettably adds some selective quotation of Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), and Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987), to support its grant of the writ.[11] *903 I respectfully suggest that the Court of Appeal’s decision was neither contrary to, nor an unreasonable application of, Santo-bello, Johnson, or Adamson.

1

In Santobello, the Supreme Court addressed “whether the State’s failure to keep a commitment concerning the sentence recommendation on a guilty plea required a new trial.” 404 U.S. at 257-58, 92 S.Ct. 495. There, as part of a plea bargain, the prosecution had agreed to make no recommendation as to the sentence, and Santobello had agreed to plead guilty to a lesser-included offense. Id. at 258, 92 S.Ct. 495. At sentencing, the prosecutor instead recommended the maximum sentence, which the judge imposed. Id. at 259-60, 92 S.Ct. 495. Upon certiorari, the Court vacated and remanded for the state court to consider the appropriate remedy for breach of the agreement. Id. at 262-63, 92 S.Ct. 495.
As part of its reasoning, the Court indeed made the broad statement upon which the majority relies: “[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.” Id. at 262, 92 S.Ct. 495.
However, this general, isolated statement does not, by itself, constitute the entire holding of Santobello,[12] With respect to the proper remedy for the government’s breach, the Court remanded to the state court and held:
The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court,the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty.
Id. at 262-63, 92 S.Ct. 495. The Court noted that if “the state court decides to allow withdrawal of the plea, the petitioner will, of course, plead anew to the original charge on two felony counts.” Id. at 263 n. 2, 92 S.Ct. 495.
Thus, contrary to the majority’s analysis, the Court in Santobello did not hold that literally every plea agreement offered by the prosecution and accepted by the defendant is enforceable by specific performance. Rather, the Court held that, when a trial court’s judgment of conviction is based on a plea induced by a promise later broken by the state, the judgment must be vacated. The Court further held that the ultimate relief would be left “to the discretion of the state court, which [was] in a better position to decide whether the circumstances of [the] case” required specific performance or withdrawal of the guilty plea. Id. at 263, 92 S.Ct. 495.
2
The majority’s grant of the petition rests entirely on the premise that “[u]nder *904 clearly established Supreme Court law, Cuero stood convicted and his plea agreement became binding the moment the first Superior Court judge accepted his guilty plea.” Maj. Op. at 884. Johnson undercuts such premise.
In Johnson,. the Supreme Court addressed “whether a defendant’s acceptance of a prosecutor’s proposed plea bargain creates a constitutional right to have the bargain specifically enforced.” 467 U.S. at 505, 104 S.Ct. 2543. There, the prosecutor proposed that, in exchange for a plea of guilty, the prosecutor would recommend a 21-year sentence served concurrently with other sentences. Id. at 505-06, 104 S.Ct. 2543. When the defendant’s counsel called the prosecutor and communicated acceptance of the offer, the prosecutor told defense counsel “that a mistake had been made and withdrew the offer.” Id. at 506, 104 S.Ct. 2543. The prosecutor then made a second offer to recommend a 21-year sentence to be served consecutively to the other sentences, which the defendant ultimately accepted. Id. “In accordance with the plea bargain, the state trial judge imposed a 21-year sentence to be served consecutively to the previous sentences.” Id..
In its analysis, the Court reasoned:
A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent’s liberty at issue here.
Id. at 507-08, 104 S.Ct. 2543 (footnote omitted). The majority completely ignores the reasonable conclusion that a fairmind-ed jurist could draw from the first sentence of this passage: a “plea bargain ... is without constitutional significance ... until embodied in the judgment of a court.” Id.[13] In other words, it is the judgment, not the acceptance of a guilty plea, that “seals the deal between the state and the defendant.” Contra Maj. Op. at 885.[14]
The Johnson Court further explained that “only when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause.” 467 U.S. at 509, 104 S.Ct. 2543. The Court then applied that rule:
*905 [Johnson’s] plea was in no sense induced by the prosecutor’s withdrawn offer; unlike Santobello, who pleaded guilty thinking he had bargained for a specific prosecutorial sentencing recommendation which was not ultimately made, at the time respondent pleaded guilty he knew the prosecution would recommend a 21-year consecutive sentence. [Johnson] does not challenge the District Court’s finding that he pleaded guilty with the advice of competent counsel and with full awareness of the consequences — he knew that the prosecutor would recommend and that the judge could impose the sentence now under attack.
Id. at 510,104 S.Ct. 2543.
The Court concluded that Johnson’s “inability to enforce the prosecutor’s offer is without constitutional significance.” Id. Johnson “was not deprived of his liberty in any fundamentally unfair way. [He] was fully aware of the likely consequences when he pleaded guilty; it is not unfair to expect him to live with those consequences now.” Id. at 511,104 S.Ct. 2543.
Thus, the Court in Johnson held that a defendant’s inability to enforce a plea offer withdrawn before the entry of judgment is without constitutional significance, not that every breach of a plea agreement after a guilty plea violates the Constitution. Consequently, there is no due process violation so long as the prosecution fulfills the promises that induced the plea upon which the judgment of conviction is based.
More importantly, Johnson clarified the holding in Santobello. The Court noted that “Santobello expressly declined to hold that the Constitution compels specific performance of a broken prosecutorial promise as the remedy for such a plea” and that “permitting Santobello to replead was within the range of constitutionally appropriate remedies.” Id. at 510-11 n. 11, 104 S.Ct. 2543 (citing Santobello, 404 U.S. at 262-63, 92 S.Ct. 495; id. at 268-69, 92 S.Ct. 495 (Marshall, J., concurring in part and dissenting in part)). “It follows that [Johnson’s] constitutional rights could not have been violated. Because he pleaded after the prosecution had breached its ’promise’ to him, he was in no worse position than Santobello would have been had he been permitted to replead.” Id.
3
The majority also concludes, erroneously, that the state court was “constitutionally obligated to construe the agreement in accordance with state contract law” and that a “state court must supply a remedy for a breached plea agreement that comports with state contract law.” Maj. Op. at 890. Although the majority relies heavily on Adamson for these propositions, I respectfully suggest that case does not support, let alone require, such conclusions.
In Adamson, the Supreme Court addressed “whether the Double Jeopardy Clause bars the prosecution of [a defendant] for first-degree murder following his breach of a plea agreement under which he had pleaded guilty to a lesser offense, had been sentenced, and had begun serving a term of imprisonment.” Adamson, 483 U.S. at 3, 107 S.Ct. 2680.[15] There, the Arizona Supreme Court held that a written plea agreement[16] required Adamson to *906 testify at the retrial of the other two individuals, that he violated the terms of the plea agreement by refusing to testify at the retrials, and that the terms of the plea agreement required the original first-degree murder charge to be reinstated automatically. Id. at 5, 107 S.Ct. 2680. The Supreme Court held that the subsequent prosecution did not violate the Double Jeopardy Clause. It reasoned that “terms of the agreement could not be clearer: in the event of [Adamson’s] breach occasioned by a refusal to testify, the parties would be returned to the status quo ante, in which case [Adamson] would have no double jeopardy defense to waive.” Id. at 10, 107 S.Ct. 2680. Thus, the Court held in Adamson that the Double Jeopardy Clause does not bar a state from vacating a judgment of conviction and reinstating criminal charges pursuant to the express terms of a plea agreement.
The majority does not rely on the holding of Adamson for its erroneous propositions, but rather on part of a sentence in dictum contained in a footnote of the Court’s opinion. In footnote 3, the Court addressed Adamson’s contention that the Arizona Supreme Court had misconstrued the terms of the plea agreement:
We will not second-guess the Arizona Supreme Court’s construction of the language of the plea agreement. While we assess independently the plea agreement’s effect on respondent’s double jeopardy rights, the construction of the plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law, and we will not disturb the Arizona Supreme Court’s reasonable disposition of those issues. The dissent’s discourse on the law of contracts is thus illuminating but irrelevant. The questions whether the plea agreement obligated the respondent to testify at the retrial of Dunlap and Robison and, if so, whether the respondent breached this duty are matters appropriately left to the state courts....
Adamson, 488 U.S. at 6 n. 3, 107 S.Ct. 2680 (emphasis added to the clause upon which the majority relies). As the Supreme Court eloquently once stated in an unrelated context: “Most importantly, the statement is pure dictum. It is dictum contained in a rebuttal to a counterargument. And it is unnecessary dictum even in that respect.” Kirtsaeng v. John Wiley & Sons, Inc., — U.S.-, 133 S.Ct. 1351, 1368, 185 L.Ed.2d 392 (2013).
Even if not dictum, the footnote has been misinterpreted by the majority. The majority, consistent with precedent of our circuit,[17] focuses solely on the statement that “the construction of the plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law.” Maj. Op. at 890. However, in context it is clear that the Supreme Court was not stating that state courts are “constitutionally obligated to construe the agreement in accordance with state contract law” and that they violate the Constitution by failing to do so. Maj. Op. at 889. And the footnote does not remotely support the contention that a state court violates the Constitution if it does not “supply a remedy for a breached plea agreement that comports with state contract law.” Maj. Op. at 890. Quite the opposite. Respecting important *907 interests of federalism and comity, the Court explained that the construction of plea agreements and whether a breach has occurred are matters of state law which are “appropriately left to the state courts.” Adamson, 483 U.S. at 6-7 n. 3, 107 S.Ct. 2680. Federal courts must not “seeond-guess[ ] the finding of a breach” and they have no “license to substitute a federal interpretation of the terms of a plea agreement for a reasonable state interpretation.” Id. Thus, the Adamson footnote, upon which the majority relies, is about deference to state courts, not about imposing new constitutional requirements on state courts.
C
The California Court of Appeal’s decision was not “contrary to” Santobello, Johnson, or Adamson. “Because none of [the Supreme Court’s] eases confront ’the specific question presented by this case,’ the state court’s decision could not be ’contrary to’ any holding from” the Supreme Court. Donald, 135 S.Ct. at 1377 (quoting Lopez v. Smith, 135 U.S. 1, 4, 10 S.Ct. 658, 34 L.Ed. 55 (2014) (per curiam)).
In Santobello, the defendant pleaded guilty in reliance upon the promises in the prosecution’s original offer, the prosecution broke a promise contained in its original offer, and the court entered judgment on the basis of the plea induced by the unfulfilled promise. Unlike Santobello, here the superior court’s judgment was not entered on the basis of the initial plea, purportedly induced by unfulfilled promises. Rather, judgment was entered on the basis of the subsequent plea, which was induced by promises that have been fulfilled. In Johnson, the prosecution withdrew its original offer before the defendant pleaded guilty. Unlike Johnson, here the prosecutor purportedly breached a plea agreement after the defendant pleaded guilty. Finally, Adamson does not remotely resemble this case. There, the defendant breached his plea bargain, and the question was whether or not the Double Jeopardy Clause prohibited the state from vacating the conviction and reinstating criminal charges.
Therefore, Santobello, Johnson, and Adamson do not address the specific question presented by this case: whether the Constitution requires specific performance of a plea bargain after a defendant has pleaded guilty but before the court has entered judgment. As a result, the state court’s decision could not be “contrary to” any holding from the Supreme Court. See Donald, 135 S.Ct. at 1377.
D
Nor was the California Court of Appeal’s decision an “unreasonable . application of’ the Court’s holdings in Santobello, Johnson, and Adamson. As discussed above, fairminded jurists could easily conclude that Cuero’s initial plea did not rest “on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration.” Santo-bello, 404 U.S. at 262, 92 S.Ct. 495; see Appendix A at 1 ¶2 (“I have not been induced to enter this plea by any promise or representation of any kind, except: ... NO DEALS W/ PEOPLE.”).[18]
Even assuming that the State did make a promise not to amend its complaint, fair-minded jurists could readily conclude that, under Johnson, Cuero’s inability to enforce the original plea agreement, which was withdrawn before the entry of judgment, is “without constitutional signifi- *908 canee.” Johnson, 467 U.S. at 507-08, 510, 104 S.Ct. 2543. Moreover, fairminded jurists could conclude that, if the prosecution did breach some binding agreement with Cuero, “permitting [Cuero] to replead was within the range of constitutionally appropriate remedies.” Johnson, 467 U.S. at 510-11 n. 11, 104 S.Ct. 2543 (explaining Santobello); Santobello, 404 U.S. at 263 & n. 2, 92 S.Ct. 495.[19]
Therefore, the state court’s ruling on the claim presented here was not “so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Richter, 562 U.S. at 103, 131 S.Ct. 770. As a result, the state court’s ruling was not an unreasonable application of Santobello, Johnson, or Adamson.
IV
Perhaps the majority’s faulty analysis can best be explained by its erroneous reliance on (1) perceived errors of state law; (2) circuit precedent (to bridge the gap between the Supreme Court’s holdings and this case); (3) a Supreme Court decision that post-dates the California Court of Appeal’s decision; and (4) issues of law framed at the highest levels of generality. Making matters worse, the majority misconstrues many of the sources of law upon which it improperly relies.
A
1
The majority erroneously relies on perceived errors of state law. Maj. Op. at 887-91 & n. 10; see Swarthout v. Cooke, 562 U.S. 216, 219-22, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011) (per curiam); Wilson v. Corcoran, 562 U.S. 1, 5, 131 S.Ct. 13, 178 L-.Ed.2d 276 (2010) (per curiam); Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); Rose v. Hodges, 423 U.S. 19, 21-22, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975) (per curiam).
Specifically, it holds that the writ must issue because the state court failed “to interpret Cuero’s plea agreement consistently with California contract law” and failed to “supply a remedy for a breached plea agreement that comports with state contract law.” Maj. Op. at 890. “But it is only noncompliance with federal law that renders a State’s criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner ‘only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.’ ” Corcoran, 562 U.S. at 5, 131 S.Ct. 13 (quoting 28 U.S.C. § 2254(a)). The Supreme Court has “repeatedly held that ‘federal habeas corpus relief does not he for errors of state law.’ ” Id. (quoting McGuire, 502 U.S. at 67, 112 S.Ct. 475). “It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.” Id. (quoting McGuire, 502 U.S. at 67-68, 112 S.Ct. 475) (alteration omitted).
The majority protests that these cases “do not speak to the situation where, as here, the Supreme Court has clearly held that the federal constitutional due process right is itself defined by reference to principles of state law.” Maj. Op. at 902 n. 10. One would expect a citation to Supreme *909 Court precedent to follow such a strong statement, but none exists. The majority cites our Buckley case, which cites Adam-son. Maj. Op. at 902 n. 10. But Adamson held no such thing. In fact, Adamson does not contain the words “due process” anywhere in the Court’s opinion. “No opinion of [the Supreme Court] supports converting California’s [contract law] into a substantive federal requirement.” Cooke, 562 U.S. at 220-21,131 S.Ct. 859.[20]
2
Even if the court could grant habeas relief on the basis of state law, the majority misconstrues California state law.
California state law did not prohibit the second amendment of the complaint. Several provisions of the California Penal Code expressly permit a prosecutor to amend an information or complaint. See Cal. Penal Code §§ 969a, 969.5(a), 1009. “Under section 1009, the People may amend an information without leave of court prior to entry of a defendant’s plea, and the trial court may permit an amendment of an information at any stage of the proceedings.” People v. Lettice, 221 Cal.App.4th 139, 163 Cal.Rptr.3d 862, 868 (2013). Sections 969a and 969.5(a) specifically deal with amendment of the complaint to add allegations of prior felonies, and § 969.5(a), upon which the State relied, addresses amendment of a complaint after a guilty plea:
Whenever it shall be discovered that a pending complaint to which a plea of guilty has been made under Section 859a does not charge all prior felonies of which the defendant has been convicted either in this state or elsewhere, the complaint may be forthwith amended to charge the prior conviction or convictions and the amendments may and shall be made upon order of the court.
Cal. Penal Code § 969.5(a). None of these statutes indicate that a prosecutor’s ability to amend the information is limited to situations in which a plea agreement has been entered.
In People v. Valladoli, the California Supreme Court interpreted both § 969a and former § 969 lk in determining whether an information could be amended to allege prior felonies after a defendant was found guilty at trial. 13 Cal.4th 590, 54 Cal.Rptr.2d 695, 918 P.2d 999 (1996). Discussing former § 969 \ the predecessor to § 969.5(a), the court said that if the defendant had “pleaded guilty before the magistrate under section 859a, ... the express terms of section 969 lh would have permitted the People to amend the information to charge his prior convictions after the guilty plea.” Id., 54 Cal.Rptr.2d 695, 918 P.2d at 1005; see also People v. Tindall, 24 Cal.4th 767, 102 Cal.Rptr.2d 533, 14 P.3d 207, 212 (2000) (citing Valladoli for this proposition). The court continued, “An obvious motivating force underlying section 969 is to prevent one accused of a crime from quickly pleading guilty before a magistrate and thereby limiting the amount of time the prosecutor has to investigate, discover, and charge the accused’s prior felony convictions.” Valladoli, 54 Cal.Rptr.2d 695, 918 P.2d at 1005.
Thus, the state statutory scheme and Valladoli permit a prosecutor to request to *910 file an amended complaint to allege prior convictions after entering a plea agreement. The majority fails to cite any California case which has definitively held that a prosecutor may not amend a complaint after the court accepts a plea agreement.[21]
Ultimately, the Supreme Court has “repeatedly held that a state court’s interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.” Bradshaw v. Richey, 546 U.S. 74, 76, 126 S.Ct. 602, 168 L.Ed.2d 407 (2005) (per curiam). Here, both the superi- or court and the appellate court determined that amendment of the complaint was permissible under state law. We must defer to those interpretations and conclude that there was no error of state law. Rather than deferring, the majority’s decision severely undermines the California Legislature’s determination, in enacting sections 969.5(a) and 1009, that prosecutors should have the ability, with the approval of the court, to amend a complaint after a plea to allege all prior felonies.
B
1
The majority erroneously.relies (heavily) on circuit precedent to bridge the gap between the Supreme Court’s cases and this one. See Glebe v. Frost, — U.S.-, 135 S.Ct. 429, 431, 190 L.Ed.2d 317 (2014) (per curiam); Lopez v. Smith, — U.S. -, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam); Marshall v. Rodgers, — U.S. -, 133 S.Ct. 1446, 1450-51, 185 L.Ed.2d 540 (2013) (per .curiam); Parker v. Matthews, — U.S.-, 132 S.Ct. 2148, 2155-56, 183 L.Ed.2d 32 (2012) (per curiam); Renico v. Lett, 559 U.S. 766, 778-79, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).
Specifically, the majority relies on circuit precedent for the following propositions, which are not supported by the Supreme Court’s decisions:
(1) The “federal constitutional due process right is itself defined by reference to principles of state law,” Maj. Op. at 902 n. 10 (citing Buckley, 441 F.3d at 695); a state court is “constitutionally obligated to construe the [plea] agreement in accordance with state contract law.” Maj. Op. at 889 (citing Buckley, 441 F.3d at 696); “[u]nder AEDPA, we ... must consider whether the [state court] decision is consistent with a proper application of state contract law in interpreting the plea agreement. ...” Maj. Op. at 888 (quoting Davis, 446 F.3d at 962).
(2) “[W]here the state has already received the benefit it bargained for— a plea of guilty and a conviction— specific performance is the best remedy, unless the defendant, whose choice it becomes, ‘electfs] instead to rescind the agreement and take his chances froih there.’ ” Maj. Op. at 890 (quoting Buckley, 441 F.3d at 699 n.ll).
(3) “Because Cuero had already performed, ‘fundamental fairness demands that the state be compelled to adhere to the agreement as well.’” *911 Maj. Op. at 891 (quoting Brown, 337 F.3d at 1162).
Take the first proposition. As discussed above, Adamson does not even contain the words “due process,” so the notion that the “federal constitutional due process right is itself defined by reference to principles of state law” comes solely from Buckley. Similarly, footnote 3 of Adamson says nothing about state contract law. See Adamson, 483 U.S. at 6 n. 3, 107 S.Ct. 2680 (construction and breach determinations are “matters of state law”). So the majority’s restriction of the relevant state law to contract law comes solely from circuit precedent in Buckley and Davis. See, e.g., Maj. Op. at 903 n. 12 (rejecting argument under § 969.5(a) because that section “is irrelevant to the interpretation of a court-approved plea agreement under state contract principles”). Finally, no Supreme Court decisions remotely support the notion that specific performance is required when a defendant has pleaded guilty and the court has accepted that plea. Such notions are inventions of our circuit.
The Supreme Court has “repeatedly emphasized [that] circuit precedent does not constitute ‘clearly established Federal law, as determined by the Supreme Court.’” Frost, 135 S.Ct. at 431 (quoting 28 U.S.C. § 2254(d)(1)). “It therefore cannot form the basis for habeas relief under AEDPA.” Matthews, 132 S.Ct. at 2155. And “Circuit precedent cannot ‘refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced.’ ” Smith, 135 S.Ct. at 4 (quoting Rodgers, 133 S.Ct. at 1450). In the past three years, the Supreme Court has caught us three times trying to evade this rule. See Frost, 135 S.Ct. at 431 (“The Ninth Circuit acknowledged this rule, but tried to get past it....”); Smith, 135 S.Ct. at 4 (“The Ninth Circuit attempted to evade this barri-er_”); Rodgers, 133 S.Ct. at 1450-51. It is unwise to think that we will slip through this time around.
2
Even if the majority could properly rely on our decisions in Brown, Buckley, and Davis, those cases not compel the conclusion that the majority reaches.
For instance, Brown and Buckley acknowledged that there are “two available remedies at law for the breach of [a] plea agreement: withdrawal of [the] plea (i.e., rescission of the contract) and specific performance.” Buckley, 441 F.3d at 699; Brown, 337 F.3d at 1161. In choosing between those remedies in Buckley, the en banc court “expressed] no view on what the proper remedy would be in a case with other facts.” Id. at 699 n. 11.
Cuero’s circumstances are readily distinguishable from those in Brown and Buckley. In both cases, we ordered specific performance because rescission of the contract was “impossible” under the circumstances and the petitioners could not “conceivably be returned to the status quo ante.” Brown, 337 F.3d at 1161; Buckley, 441 F.3d at 699. The petitioners had “paid in a coin that the state cannot refund” by testifying and/or serving their bargained-for sentences. Buckley, 441 F.3d at 699 (quoting Brown, 337 F.3d at 1161). Here, when the superior court granted permission to amend the complaint, Cuero had not performed in a way that could not be undone. Instead, to the extent Cuero had performed, the “coin” he paid was fully refunded when his relinquished trial rights were fully restored. Thus, specific performance was not required by our precedents because rescission was still possible for Cuero.
In addition, Cuero’s case differs from Davis, Buckley, and Brown because the *912 petitioners were incarcerated on the basis of pleas induced by plea agreements that the state breached. See Davis, 446 F.3d at 959-63; Buckley, 441 F.3d at 691-93; Brown, 337 F.3d at 1157-58. Thus, those cases were much closer to Santobello. Here, the initial plea, purportedly induced by a plea agreement which the state breached, was withdrawn and does not form the basis of Cuero’s incarceration. Cuero’s case is much closer to Johnson. He “was not deprived of his liberty in any fundamentally unfair way. [He] was fully aware of the likely consequences when he pleaded guilty; it is not unfair to expect him to live with those consequences now.” Johnson, 467 U.S. at 511, 104 S.Ct. 2543.
C
1
The majority erroneously relies upon a Supreme Court opinion — and numerous other authorities — issued after all of the state court decisions that related to Cuero. See Greene v. Fisher, — U.S. -, 132 S.Ct. 38, 44-45, 181 L.Ed.2d 336 (2011); Cullen v. Pinholster, 563 U.S. 170, 182, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011); Andrade, 538 U.S. at 71-72, 123 S.Ct. 1166; see also Woodall, 134 S.Ct. at 1706.
Specifically, the panel relies on Puckett v. United States, 556 U.S. 129, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009), for the following propositions:
(1) “A state court must supply a remedy for a breached plea agreement that comports with state contract law.” Maj. Op. at 890 (citing Puckett, 556 U.S. at 137,129 S.Ct. 1423).[22]
(2) The purported breach of Cuero’s plea agreement was “undoubtedly a violation of the defendant’s rights.” Maj. Op. at 883 (quoting Puckett, 556 U.S. at 136,129 S.Ct. 1423).
(3)“[P]lea bargains are essentially contracts.” Maj. Op. at 888 (quoting Puckett, 556 U.S. at 137, 129 S.Ct. 1423).
Section 2254(d)(1) “requires federal courts to focus on what a state court knew and did, and to measure state-court decisions against [the Supreme Court’s] precedents as of the time the state court renders its decision.” Greene, 132 S.Ct. at 44 (internal alteration and quotation marks omitted) (emphasis in original). “Obviously, a state-court decision cannot be contrary to clearly established Federal law that was not yet in existence.” Murray, 745 F.3d at 997. Thus, because Puckett was issued after the California Court of Appeal’s decision, it was not “clearly established Federal law” at the time the state court rendered its decision. Consequently, the majority cannot rely on Puckett.
The majority also relies on a number of other authorities issued after the state court’s decision to state the principles of law that the state court should have applied. See Maj. Op. at 889 (relying on Doe v. Harris, 640 F.3d 972, 975 (9th Cir. 2011)); id. at 888 (relying on People v. Segura, 44 Cal.4th 921, 80 Cal.Rptr.3d 715, 188 P.3d 649, 656 (2008)); id. at 888-89 (relying on Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 791 (9th Cir. 2012)); id. at 890 (relying on In re Timothy N., 216 Cal.App.4th 725, 157 Cal. Rptr.3d 78, 88 (2013)); id. at 904 n. 14 (relying on 5 Wayne R. LaFave et al., Criminal Procedure § 21.2(e) (4th ed. 2015)). This reliance, too, was impermissible, for the state court cannot be expected *913 to apply rules of law stated in authorities not yet in existence.
2
Even if the majority could rely on Puckett, that case cannot support the weight of the majority’s argument.
The Supreme Court in Puckett stated that “[w]hen a defendant agrees to a plea bargain, the Government takes on certain obligations. If those obligations are not met, the defendant is entitled to seek a remedy, which might in some cases be rescission of the agreement, allowing him to take back the consideration he has furnished, i.e., to withdraw his plea.” 556 U.S. at 137, 129 S.Ct. 1423. Clearly, withdrawal of the plea is a constitutionally permissible remedy, and Cuero received that remedy. The Puckett Court did not remotely suggest that the determination of which remedy to afford is a matter of state contract law. Also, the Puckett Court acknowledged that, although “plea bargains are essentially contracts,” “the analogy may not hold in all respects.” Id. This undermines the majority’s proposition that only state contract law can be used to determine whether amendment of the complaint was permitted.
D
Finally, the majority erroneously frames legal issues at the highest levels of generality. See Donald, 135 S.Ct. at 1377; Smith, 135 S.Ct. at 4; Nevada v. Jackson, — U.S. -, 133 S.Ct. 1990, 1994, 186 L.Ed.2d 62 (2013) (per curiam); cf. City & County of San Francisco v. Sheehan, — U.S. -, 135 S.Ct. 1765, 1775-76, 191 L.Ed.2d 856 (2015) (“We have repeatedly told courts — and the Ninth Circuit in particular — not to define clearly established law at a high level of generality.” (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011))). “By framing [the Supreme Court’s] precedents at such a high level of generality, a lower federal court could transform even the most imaginative extension of existing case law into ‘clearly established Federal law, as determined by the Supreme Court.’ ” Jackson, 133 S.Ct. at 1994 (quoting 28 U.S.C. § 2254(d)(1)). Such an “approach would defeat the substantial deference that AEDPA requires.” Id.
The majority can only grant habeas relief if the Supreme Court’s cases clearly establish that a defendant has a due process right to specific performance of a plea agreement before the entry of judgment. But none of the Supreme Court’s cases addresses that specific issue. See Smith, 135 S.Ct. at 4.
Instead, the best the majority can do is to point to Adamson for the general proposition that “the construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law.” 483 U.S. at 6 n. 3, 107 S.Ct. 2680. “This proposition is far too abstract to establish clearly the specific rule [Cuero] needs.” Smith, 135 S.Ct. at 4.
The majority treats the door supposedly opened by Adamson’s general proposition as license to engage freely in de novo determination of what California contract law requires, both for the construction of the agreement and the remedy for a breach. Maj. Op. at 887-91. Again, however, no California cases establish that specific performance is required when the State amends its complaint after entry of a plea but before judgment. As a result, the majority is forced to frame principles of California law at the highest level of generality in order to conclude that specific performance is required. The majority rests its decision on the very general prin *914 ciple that “the remedy for breach must ‘repair the harm caused by the breach.’ ” Maj. Op. at 890 (quoting People v. Toscano, 124 Cal.App.4th 340, 20 Cal.Rptr.3d 923, 927 (2004)). Such a general proposition obviously does not establish, under California law, that specific performance was the only remedy in this situation that could repair the harm caused by the breach.
To supply that final conclusion, the majority relies purely on its own de novo, ipse dixit analysis. Note that the key last paragraph before its conclusion section contains only a single citation to a source of law, and that citation does not establish that specific performance is required here. Ultimately, the court’s decision rests on its own determinations that it would be unfair not to require specific performance, Maj. Op. at 891, and that “specific performance is necessary to maintain the integrity and fairness of the criminal justice system,” Maj. Op. at 890 n. 14.[23] These conclusions are not dictated by state or federal law.
V
For the foregoing reasons, I respectfully conclude that the majority erroneously orders reversal of the district court and grant of the writ. In accordance with Supreme Court law, a fair-minded jurist could conclude that Cuero’s plea was not induced by any promise by the prosecutor. See Appendix A. Even assuming there was such a promise, a fairminded jurist could conclude that the plea agreement was without constitutional significance before the entry of judgment. And, even if there were a breach of a constitutionally binding plea agreement, nothing in any Supreme Court decision clearly establishes that the state court was required to order specific performance. Thus, the state court’s decision was neither contrary to, nor an unreasonable application of “clearly established Federal law.” 28 U.S.C. § 2254(d)(1).
For the foregoing reasons, I respectfully dissent.
Appendix A
Plea of Guilty/No Contest — Felony Signed December 8, 2005
*915 [[Image here]]
*916 [[Image here]]
*917 [[Image here]]
*918 Appendix B
Transcript of Plea Hearing December 8, 2005
[[Image here]]
*919 [[Image here]]
*920 [[Image here]]
*921 [[Image here]]
*922 [[Image here]]
*923 [[Image here]]
*924 [[Image here]]
*925 [[Image here]]
*926 [[Image here]]
*927 [[Image here]]

. Cuero actually had two prior strikes, but the State initially did not realize that fact.

. This form, which is the same form that the mistakenly majority calls a written plea agreement, is reproduced in Appendix A to this dissent.

. Cuero had been convicted of violating California Penal Code § 245(a)(1), which prohibits assault with a deadly weapon other than a firearm. “Not all section 245(a)(1) violations constitute strikes under California law.” Gill v. Ayers, 342 F.3d 911, 914 (9th Cir. 2003). "[T]o qualify a section 245(a)(1) conviction as a strike, the prosecution must establish that the defendant 'personally inflicted great bodily injury on any person, other than an accomplice, or personally used a firearm’ under section 1192.7(c)(8) or that he 'personally used a dangerous or deadly weapon’ under section 1192.7(c)(23)” of the California Penal Code. Id. (internal alterations omitted). According to the State, Cuero’s admission of a “personal use of a deadly weapon” allegation did not appear in the files it originally compiled in preparation for charging Cuero after the car crash.

. I note that the majority relies on one of Murray's statements of law that has been undermined by a subsequent Supreme Court decision. See Woodall, 134 S.Ct. at 1706; contra Maj. Op. at 883-84.

. Cuero cited only California Penal Code § 969.5(a), Alvarado, and People v. Jackson, 48 Cal.Rptr.2d 838 (Ct. App.), review granted and opinion superseded, 52 Cal.Rptr.2d 281, 914 P.2d 831 (Cal. 1996). I do not understand why the majority criticizes the superior court for then addressing these sources of law in its decision. Maj. Op. at 889-90 & n. 13, 891. The majority also suggests that it grants relief because the superior court did not "recognize[]” or "acknowledge” (unspecified) Supreme Court precedents in its decision. Maj. Op. at 883, 886. But a “state court need not cite or even be aware of [the Supreme Court's] cases under § 2254(d).” Richter, 562 U.S. at 98, 131 S.Ct. 770 (citing Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam) ("Avoiding these pitfalls does not require citation of our cases — indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.”)).

. This statement requires a slight caveat. With respect to Cuero’s ineffective assistance of counsel claims, the relevant state-court decision is that of the California Court of Appeal on collateral review. While the majority does not reach the issue, I would affirm the denial of the writ with respect to such claims.

. Based on the judge’s statements at the plea hearing, it appears that “STC” stands for "sentence for the court.”

. Because the majority and I cannot seem to agree on the basic facts of what was said at the plea hearing on December 8, 2005, I attach the transcript of that hearing as Appendix B to my dissent.

.The transcript actually says that someone named Dan Rodriguez said “Yes.” Appendix B at 2. The record does not indicate who Dan Rodriguez is, so the court of appeal could easily have concluded that the prosecutor only said his name before Cuero entered his plea. Because it does not matter for purposes of this dissent, I assume that this was a transcription error and that Mr. Trocha was the person who responded to the court.

. The majority suggests that, in the plea hearing, the State (1) “identified [the document in Appendix A] as the written plea agreement,” Maj. Op. at 887 n. 9; (2) "stood before Judge Ervin and expressed [its] intent to 'settle this case today,’ ” Maj. Op. at 886; and (3) “assented” "that the plea agreement was as to the charge and not to the specific sentence," Maj. Op. at 886. It simply did not. See Appendix B. Nowhere in the attached transcript will the reader find the statements that the majority ascribes to the State. One will search in vain for any reference by the Deputy District Attorney, or by the Deputy Public Defender, for that matter, to a “plea agreement.”
The majority reasonably notes that the superior court referred to a "plea agreement," and it reasonably speculates that a "charge bargain” existed and that Cuero believed he would never face more than 14 years, 4 months in prison. But the record contains no promise or agreement by the State to drop any charges or to refrain from amending the complaint. In that regard, the majority confuses actions taken after the plea was accepted with promises to take such actions. Trocha moved to "[d]ismiss in light of the plea.” Appendix B at 8. But the State never indicated, in either the change of plea form or the plea hearing, that such dismissal was required by the terms of any agreement.

. The majority’s opinion, like much of our circuit precedent, vacillates between conclusions under the "contrary to” and "unreasonable application of” clauses of § 2254(d)(1). Maj. Op. at 885, 887-88 ("contrary to”); Maj. *903 Op. at 887-88, 889-90 (“unreasonable application of”). We should be more precise. The " 'contrary to' and 'unreasonable application of clauses in § 2254(d)(1) are distinct and have separate meanings.” Moses v. Payne, 555 F.3d 742, 751 (9th Cir. 2009) (citing Andrade, 538 U.S. at 73-75, 123 S.Ct. 1166).

. Accurate identification of the Supreme Court’s holdings is a critical step in our analysis under 28 U.S.C. § 2254(d)(1) because "clearly established Federal law” includes only the holdings, as opposed to the dicta, of the Supreme Court's decisions. See Donald, 135 S.Ct. at 1376.

. The majority distorts this passage by selectively pairing three words from the second sentence with three words from the first sentence: “A defendant’s guilty plea thus ’implicates the Constitution,’ transforming the plea bargain from a 'mere executory agreement’ into a binding contract.” Maj. Op. at 885. However, such tortured paraphrasing does not remotely reflect the passage above or the holding of Johnson.

. Some confusion could arise from the Court’s use of “convicted” and "conviction” in this passage and in Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), upon which the majority relies. I note that the word "conviction” has multiple meanings about which fairminded jurists can disagree. "It is certainly correct that the word 'conviction' can mean either the finding of guilt or the entry of a final judgment on that finding.” Deal v. United States, 508 U.S. 129, 131, 113 S.Ct. 1993, 124 L.Ed.2d 44 1993; see also id. at 143-46, 113 S.Ct. 1993 (Stevens, J., dissenting). Here, the Supreme Court used "conviction” in the latter sense, i.e. the entry of a final judgment on a finding of guilt. Having just stated that a plea bargain "does not deprive an accused of liberty or any other constitutionally protected interest” "until embodied in the judgment of a court,” the Court did not state two sentences later that a guilty plea gives rise to the deprivation of a defendant’s liberty before the entry of judgment. And, even if this understanding of the Court’s use of “conviction” in Johnson is wrong, it is not objectively unreasonable.

. Given this description, one might get the sense that the holding of Adamson is unlikely to bear on the instant case.

. Our Court published the entirely of the eighteen-paragraph plea agreement in an appendix. See Adamson v. Ricketts, 789 F.2d 722, 731-33 (9th Cir. 1986), rev'd, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1. Contrast that plea agreement with the change of plea form in this case, which expressly states that there *906 was no plea agreement. See Appendix A at 1 ¶ 2.

. Buckley v. Terhune, 441 F.3d 688, 694-95 (9th Cir. 2006) (en banc); Davis v. Woodford, 446 F.3d 957, 962 (9th Cir. 2006). As discussed below, we should not follow these decisions because they are irreconcilable with intervening decisions of the Supreme Court. See infra.

. Without any plea agreement to construe, Adamson's purported requirement to construe the plea agreement in accordance with state contract law has no application here.

. Adamson indirectly reinforces this conclusion with its repeated emphasis that returning the defendant to the status quo ante — i.e., restoring his trial rights fully — resulted in no double jeopardy violation. See Adamson, 483 U.S. at 10-11, 107 S.Ct. 2680.

. Just as we did in Cooke, our Court in Brown v. Poole, 337 F.3d 1155 (2003), Buckley, and Davis relied upon a perceived error of state law to conclude that the federal Due Process Clause was violated. Accordingly, with respect to its analysis regarding the required remedy, the reasoning of these cases has been undermined to the point that it is clearly irreconcilable with Corcoran and Cooke. See Lair v. Bullock, 798 F.3d 736, 745 (9th Cir. 2015) (citing Miller v. Gammie, 335 F.3d 889, 892-93 (9th Cir. 2003) (en banc)). Brown, Buckley, and Davis are of no help to the majority’s analysis.

. In Lettice, the California Court of Appeal was presented with a case similar to this one, but did not decide this issue. On appeal, because the defendant did not argue that the prosecutor was precluded from filing an amended information after entering the plea agreement, the court of appeal expressly did not decide that issue. Lettice, 163 Cal.Rptr.3d at 871 n. 12. The court of appeal remanded to the superior court with instructions to exercise its discretion to determine whether to permit the amendment of the complaint. Id. at 873.

. The majority also cites Adamson, 483 U.S. at 5 n. 3, 107 S.Ct. 2680, and Davis, 446 F.3d at 962, for this proposition. Maj. Op. at 890. None of the authorities cited support the majority's contention, let alone clearly establish such contention.

. The majority determines that "specific performance is necessary to maintain the integrity and fairness of the criminal justice system” on the basis of a treatise, a 1977 Washington Supreme Court decision, and an article in the second volume of the now-defunct University of San Fernando Valley Law Review. Maj. Op. at 890 n. 14. These hardly constitute "clearly established Federal law, as determined by the Supreme Court.” 28 U.S.C. § 2254(d)(1).